1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                               SAN JOSE DIVISION

7

8    KARINA NILSEN,                          Case No.  24-cv-08306-BLF

9                   Plaintiff,               **ORDER GRANTING MOTION TO**
                                             **DISMISS FIRST AMENDED**
10          v.                               **COMPLAINT BROUGHT BY**
                                             **TEACHERS INSURANCE AND**
11   TEACHERS INSURANCE AND                  **ANNUITY ASSOCIATION OF**
     ANNUITY ASSOCIATION OF                  **AMERICA, COLLEGE RETIREMENT**
12   AMERICA; COLLEGE RETIREMENT             **EQUITIES FUND, AND TIAA-CREF**
     EQUITIES FUND; TIAA-CREF                **INDIVIDUAL AND INSTITUTIONAL**
13   INDIVIDUAL AND INSTITUTIONAL            **SERVICES, LLC, WITHOUT LEAVE**
     SERVICES, LLC; and RUTH M. TAKA,        **TO AMEND**
14
                    Defendants.              [Re:  ECF 45]
15

16

17          Plaintiff Karina Nilsen ("Nilsen") sues to recover past and future benefits under two

18   annuity contracts obtained by her late husband, Robert Moffat ("Moffat"), pursuant to an ERISA[1]

19   plan maintained by his former employer, Stanford University.  *See* First Am'd Compl. ¶¶ 1, 30-32,

20   ECF 43.  Nilson alleges in the operative first amended complaint ("FAC") that Moffat's ex-wife,

21   Defendant Ruth Taka ("Taka"), has made a competing claim for the annuity benefits.  *See* FAC ¶

22   54.  The companies that issued the annuity contracts – Defendants Teachers Insurance and

23   Annuity Association of America ("TIAA"), College Retirement Equities Fund ("CREF"), and

24   TIAA-CREF Individual and Institutional Services, Inc. (collectively, "TIAA-CREF") – accepted

25   Taka's claim, and Taka is now receiving the monthly annuity payments to which Nilson claims

26

27   _____

     [1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    entitlement.  *See id*. ¶¶ 30-32, 54.[2]

2    TIAA-CREF moves to dismiss the FAC for failure to state a claim under Federal Rule of

3    Civil Procedure 12(b)(6).  *See* Mot., ECF 45.  The motion has been fully briefed, and the Court

4    heard argument on August 7, 2025.  *See* Opp., ECF 46; Reply, ECF 49; Minute Entry, ECF 57.

5    For the reasons discussed below, TIAA-CREF's motion to dismiss is GRANTED

6    WITHOUT LEAVE TO AMEND.

7    **I.    BACKGROUND[3]**

8    *Moffat's Employment at Stanford University and Issuance of Annuity Contracts*

9    Moffat was an employee of Stanford University from approximately 1966 through 1993.

10    *See* FAC ¶ 23.  He was a participant in the Stanford Contributory Retirement Plan ("Plan"), which

11    is a retirement plan within the meaning of ERISA.  *See id.* ¶¶ 21, 23.  TIAA-CREF offers services

12    to non-profit institutions, including advising and managing employee pension, retirement, savings,

13    and investment plans.  *See id.* ¶ 26.  Stanford utilized those services, and its Plan was funded by

14    annuity contracts sold by TIAA-CREF.  *See id.* ¶¶ 28-29.  In connection with his employment at

15    Stanford and participation in the Plan, Moffat obtained two annuity contracts, one with TIAA and

16    the other with CREF.  *See id.* ¶ 30.

17    *Moffat's Retirement and Annuity Start Date while Married to Taka*

18    Moffat married Taka in 1991.  *See* FAC ¶ 31.  In 1993, Moffat retired and elected to

19    receive his benefits under the Plan.  *See id.* ¶ 32.  Both annuity certificates list Moffat as the first

20    annuitant, and his then-wife Taka as the second annuitant.  *See id.*  The annuity contracts provide

21    for monthly payments to Moffat for his lifetime, and thereafter monthly payments to Taka for her

22    lifetime if she survives Moffat.  *See* Annuity Contracts, ECF 18-1, 18-2.

23

24    [2] At the time the FAC was filed, Nilsen did not know if TIAA-CREF had accepted Taka's claim.
*See* FAC ¶ 54.  At the hearing on TIAA-CREF's motion to dismiss, TIAA-CREF's counsel

25    confirmed that Taka is receiving monthly payments under the two annuity contracts.

26    [3] The Background section is drawn from the facts alleged in the FAC, which are accepted as true
for purposes of evaluating the Rule 12(b)(6) motion to dismiss.  *See Sinclair v. City of Seattle*, 61

27    F.4th 674, 678 (9th Cir. 2023).  The Court also considers the annuity contracts, which are not
attached to the FAC, under the incorporation by reference doctrine.  *See Louisiana Mun. Police*

28    *Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

United States District Court
Northern District of California

1    *Moffat's Divorce From Taka, Marriage to Nilsen, and Issuance of "QDRO"*

2    Moffat and Taka divorced in 1999. *See* FAC ¶ 34. They entered into a court-approved

3    Marital Settlement Agreement under which Taka waived all rights to the TIAA-CREF annuities.

4    *See id.* ¶¶ 34-35.

5    Moffat and Nilsen married in 2003. *See* FAC ¶ 37. Moffat asked TIAA-CREF about

6    removing Taka as the second annuitant on his annuity contracts, and TIAA-CREF advised him

7    that he could change the second annuitant designation through a Qualified Domestic Relations

8    Order ("QDRO"). *See id.* ¶¶ 36-38. In 2010, the San Mateo County Superior Court issued an

9    order titled "Qualified Domestic Relations Order (QDRO)," stating that although the annuity

10   contracts name Taka as the second annuitant, Taka waived all rights to the annuity contracts when

11   she and Moffat divorced.[4] *See* QDRO (appended to FAC) ¶ 6, ECF 43. The "QDRO" designates

12   Nilsen as the "[a]lternate [p]ayee," and directs that any benefits otherwise payable to Taka as the

13   second annuitant instead be paid to Nilsen. *See id.* ¶¶ 7-8, 12.

14   *Moffat's Death and Nilsen's Presentation of Her Claim for Annuity Benefits*

15   Moffat passed away in May 2024. *See* FAC ¶ 45. On July 9, 2024, Nilsen submitted a

16   claim for annuity benefits to TIAA-CREF via Federal Express overnight mail. *See id.* ¶¶ 46-48.

17   She submitted a follow-up letter on July 16, 2024, and second copy of her claim on August 6,

18   2024, both via Federal Express. *See id.* ¶¶ 49-53. TIAA-CREF did not respond. *See id.* ¶¶ 45-53.

19   *Present Lawsuit*

20   Nilsen filed this suit against TIAA-CREF in November 2024. *See* Compl., ECF 1. TIAA-

21   CREF filed a motion to dismiss the complaint, which was set for hearing on May 1, 2025. *See*

22   Mot., ECF 18. The Court began the hearing by asking whether Taka, who had not yet been named

23   in the suit, is an indispensable party. After a colloquy with counsel for both Nilsen and TIAA-

24   CREF, the Court terminated TIAA-CREF's motion to dismiss without prejudice and set a deadline

25   for Nilsen to file an amended complaint adding Taka as a defendant. *See* Order, ECF 42.

26

27   ────────────────
[4] TIAA-CREF contends that the order issued by the San Mateo County Superior Court does not
28   constitute a QDRO for purposes of ERISA.

1       Nilsen timely filed the operative FAC, naming both TIAA-CREFF and Taka as defendants,

2   and asserting causes of action for:  (1) benefits and clarification of rights under ERISA; (2) breach

3   of fiduciary duty under ERISA; and (3) declaratory relief.  *See* FAC ¶¶ 56-79.  The Court

4   understands all three causes of action to be asserted against TIAA-CREF and the third cause of

5   action to be asserted against Taka.

6       Taka was served by substituted service on July 1, 2025.  *See* COS, ECF 51.  She has not

7   appeared.  TIAA-CREF filed the present Rule 12(b)(6) motion on May 30, 2025, seeking

8   dismissal of the FAC without leave to amend.  *See* Mot., ECF 45.

9   **II.    LEGAL STANDARD**

10      Dismissal of a complaint is appropriate under Federal Rule of Civil Procedure 12(b)(6) "if

11  the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a

12  claim." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).  When considering a Rule

13  12(b)(6) motion, a court must "take all allegations of fact as true and construe them in the light

14  most favorable to the nonmoving party." *Id*.  While a complaint need not contain detailed factual

15  allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

16  that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

17  *v. Twombly*, 550 U.S. 544, 570 (2007)).

18  **III.    DISCUSSION**

19      TIAA-CREF moves to dismiss the two ERISA causes of action, for payment of annuity

20  benefits and breach of fiduciary duty, for failure to state a claim.  TIAA-CREF moves to dismiss

21  the third cause of action, for declaratory relief, as derivative of the ERISA causes of action.

22  Nilsen contends that all three causes of action are adequately pled.

23      **A.    First Cause of Action – Benefits and Clarification of Rights under ERISA**

24      The first cause of action alleges that, "Pursuant to the QDRO and ERISA, Plaintiff is a

25  beneficiary as defined by ERISA and is entitled to retroactive and future second annuitant benefits

26  under the Annuity Contracts, payable for the duration of Ms. Taka's life or Plaintiff's life,

27  whichever is shorter." FAC ¶ 60.  The first cause of action further alleges that TIAA-CREF has

28  violated ERISA by refusing to accept Nilsen's claim for benefits.  *See id.* ¶¶ 61-62.  Nilsen seeks a

United States District Court
Northern District of California

1    declaration as to her current and future entitlement to annuity benefits and an order requiring

2    TIAA-CREF to pay her ongoing monthly annuity benefits for as long as Taka is alive.  *See id.* ¶

3    64.  TIAA-CREF argues that this claim is foreclosed by the Ninth Circuit's decision in *Carmona*

4    *v. Carmona*, 603 F.3d 1041 (9th Cir. 2010).  This Court agrees, as discussed below.

5         In *Carmona*, the Ninth Circuit discussed 1980s-era amendments to ERISA that "sought to

6    protect the rights of surviving spouses . . . by providing economic security through a stream of

7    income to surviving spouses, even after the participant's death."  *Carmona*, 603 F.3d at 1053

8    (internal quotation marks and citation omitted).  "In order to protect surviving spouses in the event

9    of the plan participant's death or divorce, ERISA provides for two types of survivor annuity

10   benefits."  *Id*.  The first type is a qualified preretirement survivor annuity ("QPSA"), which is paid

11   when a vested participant dies before the annuity start date and the participant is survived by a

12   spouse.  *See id.*  Because Moffat did not die before the annuity start date, the annuities at issue in

13   this case are not QPSAs.

14        Where, as here, the participant does not die before the annuity start date, annuity benefits

15   are "paid in the form of the second type, a qualified joint and survivor annuity or 'QJSA.'"

16   *Carmona*, 603 F.3d at 1053.  QJSA benefits "are payable to the plan participant for his lifetime

17   after the annuity start date and, if the plan participant dies before his spouse, the surviving spouse

18   will receive no less than 50 percent of the amount of the annuity for the remainder of her lifetime."

19   *Id*.  "QJSA benefits are particular to the surviving spouse and may not be waived by the

20   participant alone."  *Id*.  "The only way for the participant to opt out of the QJSA is for the

21   participant and his spouse together to waive the QJSA benefit plan in writing."  *Id*. at 1057.  They

22   "may only do so during the applicable election period which is defined as the 180-day period

23   ending on the annuity starting date."  *Id*. (internal quotation marks and citation omitted).  Thus, the

24   annuity start date, which often is the participant's retirement date, "is the point at which the

25   surviving spouse benefits vest in the participant's spouse."  *Id*.  In other words, "once a participant

26   retires, the spouse at the time becomes the 'surviving spouse' entitled to the QJSA benefits."  *Id*.

27   at 1058.

28        It is clear on the face of the FAC that Moffat and Taka were married on the annuity start

1    date, making her the surviving spouse entitled to the QJSA benefits at issue in this case.  *See* FAC

2    ¶¶ 31-32.  The FAC does not allege that Moffat and Taka together waived the QJSA benefit plan

3    in writing before the annuity start date.  Nilsen has not suggested that her pleading could be

4    amended to allege that Moffat and Taka did execute such a waiver before the annuity start date.

5    Accordingly, it appears on the face of the FAC that Taka became entitled to the annuity payments

6    following Moffat's death.

7         Nilsen alleges that the domestic relations order issued by the San Mateo County Superior

8    Court entitles her to the annuity benefits rather than Taka.  As discussed above, that order directs

9    that in the event of Moffat's death, any annuity benefits that otherwise would be payable to Taka

10   must be paid to Nilsen instead.  *See* FAC ¶¶ 7-8, 12.  TIAA-CREF correctly argues that the

11   *Carmona* court held that "a DRO issued after the participant's retirement may not alter or assign

12   the surviving spouse's interest to a subsequent spouse."  *Carmona*, 603 F.3d at 1060.  "[T]he

13   surviving spouse benefits irrevocably vest in the current spouse when the plan participant retires."

14   *Id*. at 1059.  To the extent the state court order was intended to create constructive trust on the

15   annuity proceeds for Nilsen's benefit, "a state law constructive trust cannot be used to contravene

16   the dictates of ERISA."  *Id*. at 1061.  Consequently, Nilsen's reliance on the domestic relations

17   order issued by the San Mateo County Superior Court is misplaced, and she has failed to allege

18   facts showing that she has a plausible claim to the annuity benefits under ERISA.

19        In her opposition brief, Nilsen argues that this Court should not follow *Carmona* because it

20   conflicts with the United States Supreme Court's decision in *Kennedy v. Plan Adm'r for DuPont*

21   *Sav. & Inv. Plan*, 555 U.S. 285 (2009).  At the hearing, Nilsen's counsel acknowledged that was a

22   difficult argument to make, because this Court is in the Ninth Circuit and is bound by its decisions.

23        TIAA-CREF's motion to dismiss is GRANTED as to Nilsen's first cause of action for

24   benefits and a clarification of rights under ERISA.

25        **B.    Second Cause of Action – Breach of Fiduciary Duty under ERISA**

26        The second cause of action alleges that TIAA-CREF breached fiduciary duties owed to

27   Nilsen under ERISA by failing to comply with the domestic relations order issued by the San

28   Mateo County Superior Court, and by failing to respond to her claims for benefits under the

United States District Court
Northern District of California

1    annuities.  *See* FAC ¶¶ 70-71.  TIAA-CREF argues that this cause of action fails to state a claim

2    for several reasons, including that the annuities are not Plan assets governed by ERISA and, even

3    if they are, Nilsen is a stranger to the annuities who is not owed any fiduciary duties by TIAA-

4    CREF.  The Court finds the latter argument to be dispositive.  Under ERISA, a plan fiduciary

5    owes duties to "the participants and beneficiaries."  29 U.S.C. § 1101(a)(1).  Even assuming that

6    the annuity contracts fall within the scope of ERISA, Nilsen is a stranger to the annuity contracts

7    and thus is not owed any fiduciary duties by TIAA-CREF.

8          TIAA-CREF's motion to dismiss is GRANTED as to Nilsen's second cause of action for

9    breach of fiduciary duties under ERISA.

10          **C.      Third Cause of Action – Declaratory Relief**

11          The third cause of action for declaratory relief is derivative of the first two causes of action

12   under ERISA, and therefore falls with them.

13          TIAA-CREF's motion to dismiss is GRANTED as to the third cause of action for

14   declaratory relief.

15          **D.      Leave to Amend**

16          A district court ordinarily must grant leave to amend unless one or more of the following

17   "*Foman* factors" is present:  (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure

18   to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of

19   amendment.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)

20   (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "[I]t is the consideration of prejudice to the

21   opposing party that carries the greatest weight."  *Id*.  However, a strong showing with respect to

22   one of the other factors may warrant denial of leave to amend.  *Id*.

23          Nothing in the record suggests the presence of any of the first four factors – undue delay,

24   bad faith, failure to cure deficiencies by amendment, or undue prejudice.  However, the Court

25   finds that the fifth factor, futility, warrants denial of leave to amend.  Given the Ninth Circuit's

26   holding in *Carmona*, Nilsen could not amend her pleading to allege a viable ERISA claim

27   grounded in TIAA-CREF's failure to pay her the annuity benefits at issue.

28          Accordingly, the motion to dismiss will be granted without leave to amend.

*United States District Court*
*Northern District of California*

**IV.    ORDER**

      (1)    TIAA-CREF's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to all causes of action; and

      (2)    This order terminates ECF 45.

Dated:  August 13, 2025

_____
BETH LABSON FREEMAN
United States District Judge